542 A.2d 102

**COMMONWEALTH of Pennsylvania**

**v.**

**Grover DINWIDDIE, Appellant.**

Superior Court of Pennsylvania.

Submitted August 24, 1987.

Filed April 20, 1988.

Reargument Denied June 9, 1988.

Robert M. Lipshutz, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before McEWEN, JOHNSON, and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for robbery,[1] criminal conspiracy,[2] possession of instruments of crime,[3] bribery,[4] and obstruction of the administration of justice.[5] Appellant contends that the trial court erred in failing to (1) grant his motion for a new trial on the basis that the prosecution purposely used its peremptory challenges to exclude members of defendant's race from the jury; (2) suppress an impermissible photo array; and (3) order the suspension of departmental procedure so that five police officers could testify as reputation witnesses. For the reasons set forth below, we vacate the judgment of sentence and remand for a new trial.

On August 31, 1984, appellant, a black Philadelphia police officer, was charged with having committed three armed robberies and related offenses. Following denial of pre-trial motions, the venire was empaneled. The trial court conducted voir dire and questioned each potential juror as to his or her occupation, residence, and family status. The prosecutor then exercised his peremptory challenges to strike six potential jurors from the venire, five of whom were black. Subsequently, a jury composed of ten white and two black jurors was selected. On two separate occasions, appellant's counsel objected to the prosecution's peremptory challenges alleging that the prosecution excluded five potential jurors solely because they were black and members of the defendant's race. Appellant's counsel moved to discharge the jury on the ground that appellant's constitutional rights had been violated. The trial court

1. 18 Pa.C.S.A. § 3701.
2. 18 Pa.C.S.A. § 903.
3. 18 Pa.C.S.A. § 4701.
4. 18 Pa.C.S.A. § 907.
5. 18 Pa.C.S.A. § 5101.

requested that the prosecutor place his reasons for the peremptory challenges on the record, but the prosecutor refused to do so stating that such action was unnecessary and that there did not exist a prima facie case of systematic exclusion of members of defendant's race. Following the trial, appellant was found guilty and sentenced to an aggregate term of fifteen to thirty years incarceration. Post-trial motions were argued and denied. This appeal followed.

Appellant first contends that the prosecutor improperly used peremptory challenges to strike members of appellant's race from the jury. Appellant argues that the only possible inference that can be drawn from the facts of this case indicates that the prosecutor purposely discriminated against selecting members of defendant's race from sitting as jurors at his trial. Thus, appellant, in support of his argument, urges us to follow the recent United States Supreme Court decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). For the reasons set forth below, we agree with appellant's contention.

■ It is well-established that "the constitutional standard of fairness requires that a defendant have 'a panel of impartial indifferent jurors.'" *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)). The jury should be composed of a selection of defendant's peers, a cross-section of the community. *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880); *see also Batson v. Kentucky, supra* 476 U.S. at 84–85, 106 S.Ct. at 1716. Although a defendant is not constitutionally entitled to a jury composed in whole or part of persons of his or her own race, *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975), the Equal Protection Clause requires that the jury selection process be free from any taint of discriminatory purpose, *Strauder v. West Virginia, supra* 100 U.S. at 305. More than a century ago, the Supreme Court held that the purpose of selecting an impartial jury was to safeguard a defendant's fourteenth amendment right to "protection of life and liberty against race or color prejudice." *Id.* at 309.

The decision in *Strauder* laid the foundation for the Supreme Court's unrelenting efforts to eradicate racial discrimination in the procedures used to select the venire from which individual jurors are drawn. *Batson v. Kentucky, supra* 476 U.S. at 84–85, 106 S.Ct. at 1716. In *Batson*, the Supreme Court, expressly overruling its decision in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), upheld the constitutional limitations on a prosecutor's use of peremptory challenges to purposely exclude members of a defendant's race from participating as jurors and ruled that the discriminatory use of peremptory challenges in the jury selection process against a member of a cognizable racial group constitutes a violation of the Equal-Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky, supra* 476 U.S. at 96–97, 106 S.Ct. at 1723. In *Batson*, the Court observed

> [a]lthough a prosecutor is entitled to exercise peremptory challenges "for any reason at all, as long as that reason is related to his [or her] view concerning the outcome" of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.

*Id.* at 89, 106 S.Ct. at 1718–19 (citations omitted).

In *Batson, supra*, the Supreme Court set forth a new procedure by which a defendant could establish a prima facie case of discrimination in the jury selection process. *Id.* at 96–97, 106 S.Ct. at 1723. The Court noted that under *Swain v. Alabama, supra*, a defendant, in order to establish a prima facie case, was required to show that the prosecution engaged in a systematic pattern of exclusion, based on race, over a series of cases. *Batson v. Kentucky, supra* at 92–93, 106 S.Ct. at 1720–21; *see also Swain v. Alabama, supra* 380 U.S. at 223, 85 S.Ct. at 837. The *Batson* Court held that the evidentiary standard under *Swain*, "placed on defendants a crippling burden of proof", *Batson v. Kentucky, supra* 476 U.S. at 92, 106 S.Ct. at 1720. Under the new standard announced by the Court in *Batson*, the defendant may establish a prima facie case of purposeful discrimination based solely on evidence present-

ed at defendant's trial concerning the prosecutor's discriminatory use of peremptory challenges. *Id.* at 96, 106 S.Ct. at 1723. The Supreme Court set forth the test as follows:

> The defendant first must show that he [or she] is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Id.* at 96, 106 S.Ct. at 1723 (citations omitted).

Once the defendant has raised this inference, it is incumbent upon the trial court, after considering all the relevant circumstances, to determine if the defendant has established a prima facie case of intentional discrimination. *Id.* at 96–97, 106 S.Ct. at 1723. The burden then shifts to the prosecution to give a neutral explanation for striking the potential jurors. *Id.* In meeting its burden, however, the prosecutor, however, may not state that the jurors were excluded because of an assumption that they would be biased towards the defendant solely because of their shared race. *Id.* at 96–97, 106 S.Ct. at 1723. In addition, it is insufficient for the prosecutor to merely state that his or her actions were done in good faith and no racial motive exists for striking members of defendant's race. *Id.* at 96–97, 106 S.Ct. at 1723.

Here, as the trial court recognized, appellant has established a prima facie case to support an inference that the prosecutor improperly used peremptory challenges to exclude members of appellant's race from the petit jury. Initially, appellant, who is black, demonstrated that he is a member of a racially cognizable group and that the prosecution exercised its peremptory challenges to exclude members of his race. *See* N.T. June 23, 1986 at 31–33, 43–45

(Voir Dire Examination); *see also Batson v. Kentucky*, *supra* at 96–97, 106 S.Ct. at 1723. Five of the six peremptory challenges exercised by the prosecutor were used against black venire members. See N.T., June 23, 1986 at 43. Additionally, appellant made timely objections both during and at the conclusion of the jury selection.[6] *See* N.T. June 23, 1986 at 30, 43.

In accordance with *Batson*, the trial court, upon considering all the relevant circumstances, directed the prosecutor to come forward with an explanation for challenging the five black venire members. N.T. June 23, 1986 at 31. The court's directive that the prosecutor provide an explanation for striking the black venire members evidences that the court was fully satisfied that appellant had presented a prima facie showing of discrimination. *See Batson v. Kentucky, supra* at 96–97, 106 S.Ct. 1723, *Commonwealth v. McCormick*, 359 Pa.Superior Ct. 461, 476–77, 519 A.2d 442, 450 (1986). After the court made its threshold determination, the burden shifted to the prosecution to provide a neutral explanation for striking the black venire members. *See Batson v. Kentucky, supra* 476 U.S. at 96–97, 106 S.Ct. at 1723; *Commonwealth v. McCormick, supra* 359 Pa.Superior Ct. at 469, 519 A.2d at 446. In response to the court's request, the prosecutor stated on the record that he took exception to that procedure and declined to articulate his reasons for striking the black venire members. N.T.

6. Although a jury composed of ten white jurors and two black jurors was eventually empanelled, we are mindful of Justice Marshall's concurring opinion in *Batson*, in which he stated that:

> Merely allowing defendants the opportunity to challenge the racially discriminatory use of peremptory challenges in individual cases will not end the illegitimate use of the peremptory challenge.
>
> [W]here only one or two black jurors survive the challenges for cause, the prosecutor need have no compunction about striking them from the jury because of their race.... Prosecutor's are left free to discriminate against blacks in jury selection provided that they hold that discrimination to an "acceptable" level.

*Batson v. Kentucky, supra* 476 U.S. 105, 106 S.Ct. at 1727–28. Thus, the presence of two black jurors at appellant's trial is not sufficient to overcome the presumption that the prosecutor exercised his peremptory challenges to exclude five black venire members because of their race.

June 23, 1986 at 32. Appellant then motioned to strike the jury, but the court denied the motion. *Id.* at 45. By failing to articulate any reasons for his action, as he is required to do under *Batson*, the prosecution failed to carry its evidentiary burden. Because the court gave the Commonwealth the opportunity to state a nondiscriminatory reason for the peremptory challenges of the five black venire members, and because the Commonwealth declined to do so, we conclude that it failed to provide a nondiscriminatory explanation. Accordingly, because the Commonwealth was unable to articulate a neutral explanation for its actions, we must vacate the judgment of sentence and remand for a new trial.[7]

For the above-stated reasons, we vacate the judgment of sentence and remand for a new trial.[8]

Judgment of sentence vacated and case remanded for a new trial. Jurisdiction is relinquished.

[7.] In both *Batson* and *McCormick*, the respective courts concluded that the appropriate remedy was to remand to the trial court for an evidentiary hearing. An evidentiary hearing was necessary in these cases, however, because, unlike the instant case, the prosecution was not given the opportunity to articulate a legitimate nondiscriminatory reasons for the peremptory challenges.

[8.] Because of our disposition of this issue, we need not address appellant's remaining contentions.